T.C. Summary Opinion 2008-163

UNITED STATES TAX COURT

KENNETH F. REINERT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24409-07S.               Filed December 23, 2008.

Kenneth F. Reinert, pro se.

Rachael J. Zepeda, for respondent.

GERBER, Judge:  This case was heard pursuant to the

provisions of section 7463[1] of the Internal Revenue Code in

effect when the petition was filed.  Pursuant to section 7463(b),

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 2005, the taxable year in
issue.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $5,368 income tax deficiency and a $1,074 accuracy-related penalty under section 6662(a) for petitioner's 2005 tax year. The issues for our consideration are whether petitioner received gross income of $21,248.18 because of the termination of his life insurance policy and whether he is liable for an accuracy-related penalty under section 6662(a).

## Background[2]

At the time his petition was filed, petitioner resided in Arizona. On July 17, 1958, petitioner purchased a life insurance policy with the Northwestern Mutual Life Insurance Co. (Northwestern). The face amount of the policy was $10,000, and the $52.40 premium was payable every 4 months until July 17, 2035, or until petitioner's 65th birthday, at which time the policy would be fully paid. The policy had a cash surrender value which continued to increase.

As the cash value increased, petitioner borrowed against that value. As of 2005 the cash value of the policy was $29,933.78. At the same time, petitioner's outstanding loan balance against the cash value was $28,492.40, and the premiums

---

[2] The parties' stipulation of facts and exhibits is incorporated by this reference.

he paid totaled $8,685.60.  Over the years petitioner was not paying interest on the loans outstanding against the cash value of the insurance policy, and Northwestern treated the interest on the loans, under the terms of the policy, as additional loans against the cash value of the policy.

Under the policy, "If indebtedness equals or exceeds the cash value at any time, his policy shall terminate thirty-one days after a notice of termination has been mailed to the last known address of the Owner".  The policy terms also provided that "Upon receipt at the Home Office of this policy and of a full and valid surrender of all claims, the insurance shall terminate and the Company will pay, as directed, the cash value less any indebtedness."  At the end of December 2004, Northwestern sent petitioner a notice that the loan amount would soon exceed the cash value and that the policy would "terminate".  The notice also advised that termination would trigger a taxable event and would result in reportable ordinary income.  At that point petitioner owed $1,356.78 interest on his loan against the cash value of the policy and chose not to pay the interest, resulting in the loan balance exceeding the cash value of the policy. Petitioner advised Northwestern that if the policy "terminated" it was not a taxable event, whereas if the policy was "surrendered" it was a taxable event.  Petitioner chose not to

pay the interest, the loan amount exceeded the policy cash value, and the policy was terminated. Petitioner did not physically surrender the policy.

On February 21, 2005, petitioner received a form entitled "Surrender of Policy for Cash Value" along with a $1,269.57 check from Northwestern representing the residual cash value after considering petitioner's outstanding loan balance. Petitioner signed the form and endorsed and cashed the $1,269.57 check.

Because of the termination, petitioner lost the $10,000 of life insurance coverage. In January 2006 petitioner received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., for his 2005 tax year from Northwestern reflecting a gross distribution of $29,933.78 and a taxable amount of $21,248.18. The difference between the gross distribution and the taxable amount was $8,685.60, the total amount petitioner had paid in premiums on the policy.

Petitioner believes that Northwestern used the termination as leverage to force policy holders to pay interest on their outstanding loans borrowed against the cash surrender value of their policies. In other words, petitioner had $10,000 of fully paid life insurance in force and had borrowed all of the increases in cash surrender value to a point where the annual increases in policy value paid the interest on petitioner's

outstanding policy loans.  In that way, the insurance company did not collect interest on the loans, and, because petitioner was 65 years old (making his policy paid up), he made no more premium payments.

## Discussion

Petitioner allowed his policy to terminate by not paying the interest on outstanding loans so that the loan balance exceeded the threshold for termination.  Petitioner contends that a "termination" of a policy in this manner is not a taxable event because the pertinent statutes and regulations expressly apply to a "surrender" of a policy.

Section 72(e)(1)(A)(i), (5)(A), and (C) generally provides that an amount received in connection with a life insurance contract, which is not received as an annuity, constitutes gross income to the extent that the amount received exceeds the investment (basis) in the insurance contract.  Section 72(e)(6)(A) generally provides that the "investment" in the contract is the aggregate amount of premiums.

In particular, and as pertinent to this case, section 1.72-11(d)(1), Income Tax Regs., provides

> Any amount received upon the surrender, redemption, or maturity of a contract to which section 72 applies, which is not received as an annuity under the rules of paragraph (b) of § 1.72-2, shall be included in the gross income of the recipient to the extent that it, when added to amounts previously received under the contract and which were excludable from the gross income of the recipient under the law applicable at the time of

receipt, exceeds the aggregate of premiums or other consideration paid. * * *

Petitioner argues that his insurance policy contract was "terminated" and that he did not literally "surrender" the policy. He relies on dictionary definitions of those terms; i.e., a "termination" in the setting of his case is an involuntary event, whereas a "surrender" is a voluntary act that he did not perform. Because the statute and the regulations use the term "surrender" and the term "termination" is absent, petitioner argues that Congress intended that amounts received in excess of investment on account of termination are not includable in his gross income. Petitioner has not provided any reference to legislative history in support of his contention. Petitioner does not question the amounts in dispute, only the legal question of whether the excess over investment is taxable.

We addressed a substantially similar set of circumstances in Atwood v. Commissioner, T.C. Memo. 1999-61. In that case, as with petitioner, the insurance contracts provided for the termination or lapse of the policy when the total loan, including unpaid interest, exceeded the policy cash value or a similar threshold. Likewise in Atwood, the taxpayers failed to repay any portion of the loans or interest thereon. Their insurance policy contracts were terminated, and they were sent a small check reflecting the amount of the cash surrender value after considering the outstanding loans. In Atwood, as in petitioner's

case, the termination resulted in the outstanding loan's being satisfied by the cash value of the policy. In Atwood the excess of the cash surrender value over the total premiums was held to be ordinary income.

The cash value of petitioner's insurance policy increased from its 1958 inception to the time of termination by $29,933.78. No amount of that increase in value was distributed to petitioner as a dividend or distribution and, as a result, petitioner paid no tax on the increase between 1958 and 2005. During that same period petitioner paid $8,685.60 in premiums on the life insurance policy and borrowed $28,664.21 (representing principal and interest). As of 2005 petitioner had attained the age of 65, no further premiums were due, and his life insurance policy was considered fully paid.

After petitioner was warned by Northwestern that his outstanding loans and interest were going to exceed the amount that would result in termination under the terms of the life insurance contract, he decided to allow the termination. In response, Northwestern sent petitioner a $1,269.57 check representing the difference between the $29,933.78 cash value of the policy and petitioner's $28,664.21 outstanding loan (including interest accretions) against the cash value. Northwestern sent petitioner a Form 1099-R reflecting the above information and advising petitioner that $21,248.18 was

includable in his 2005 income. The $21,248.18 represents the $29,933.78 cash value less petitioner's investment/basis of $8,685.60 in premiums paid.

Although petitioner complains that he received only $1,269.57 and he did not "surrender" his policy,[3] when the policy terminated, petitioner was relieved of $28,664.21 in outstanding loans which he had taken out during the 47 years the policy was in force. So, in effect, he received $29,933.78, $1,269.57 in cash and $28,664.21 in payment or credit against his outstanding loan obligations. Petitioner could have further deferred reporting this income by paying interest on or reducing the principal of his loan to an amount that would not have caused termination. In addition, he could have maintained his paid-up life insurance coverage by maintaining the loan balance below the threshold amount.

Section 72(e) causes the increases in value of insurance contracts to be taxable when the policy ends prior to the payment of an annuity. This situation is one that permits the deferral of the reporting of income until a triggering event occurs. We see no distinction between the termination and surrender of an insurance policy for this purpose. The physical act of

---

[3] We note that although petitioner may not have physically surrendered his policy, he did sign a form entitled "Surrender of Policy for Cash Value" in order to negotiate the $1,269.57 check from Northwestern.

submitting the policy is of no import in this setting. The policy has been terminated and no contractual relationship continued between petitioner and Northwestern. In reality, petitioner was allowed to defer the increases in value of his policy for many years, a fact that he fails to focus upon. We accordingly hold that petitioner had $21,248.18 of income as determined by respondent.

Respondent also determined that petitioner was liable for an accuracy-related penalty under section 6662(a) on the underpayment of tax for his 2005 tax year. Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax, which is defined in section 6662(d)(1)(A) as an understatement that exceeds the greater of 10 percent of the tax required to be shown or $5,000. Petitioner reported $2,853 of tax and accordingly his tax was understated in the amount of $5,368, an amount that is more than 10 percent of the tax required and also more than $5,000.

Petitioner would therefore be subject to the penalty unless he can show that any part of the understatement is attributable to an item that was adequately disclosed and has a reasonable basis, or for which there was substantial authority for its tax treatment. Sec. 6662(d)(2)(B).

- 10 -

Petitioner, although issued a Form 1099-R by Northwestern indicating taxable distributions upon termination of his insurance policy, made no disclosure on his income tax return of the Form 1099-R from Northwestern or explanation as to why the amounts shown thereon were not reported on his 2005 return. See sec. 6662(d)(2)(B)(ii)(I). Petitioner has argued that a termination was not contemplated but has not shown any authority, substantial or otherwise, for excluding these amounts from income.

We accordingly hold that petitioner is liable for the accuracy-related penalty, as determined by respondent.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.